Girard Trust Company, Trustee, Appellee, v. Henry Null et al.; Walter V. Hoagland, Appellant.

Filed January 24, 1912. No. 16,998.

Acknowledgment, Authority to Take. A notary public is not disqualified from taking an acknowledgment of a mortgage made to a loan company, merely because it is shown that he was at the time local agent of the mortgagee, it not appearing that he was a stockholder in such company or otherwise beneficially interested

in having the mortgage made. Nor would the fact that such mortgage was executed as a renewal of a prior mortgage, in which such notary had an indirect interest, disqualify him, it not appearing that the execution of such renewal mortgage operated to his benefit in relation to his indirect interest in the original mortgage.

APPEAL from the district court for Lincoln county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*H. P. Leavitt* and *Hoagland & Hoagland,* for appellant.

*Albert Muldoon,* contra.

FAWCETT, J.

From a decree of the district court for Lincoln county, awarding the plaintiff a foreclosure of its mortgage upon the northeast quarter of section 10, township 16, range 29, in said county, defendant Walter V. Hoagland appeals.

The record shows that Henry Null, originally one of the defendants in this suit, proved up on the land in controversy as a government homestead, and was residing there with his family, claiming it as a homestead, at the times of the execution of all of the instruments hereinafter referred to. May 1, 1887, Null mortgaged the land to the Central Nebraska Loan & Trust Company for $350. T. C. Patterson was president and a director and stockholder in that company. December 1, 1888, Patterson, as the agent for McKinley-Lanning Loan & Trust Company, which for brevity will be designated as the McKinley Company, obtained for the Nulls from that company a loan of $500 for five years at 10 per cent. per annum. To secure this loan two mortgages were executed by the Nulls and acknowledged before Mr. Patterson as notary public, the principal mortgage being for $500 with 7 per cent. interest, payable semi-annually, and the other, called a commission mortgage, being for $75, which represented the other 3 per cent. of interest for the five years.

At the time of executing these mortgages, Mr. Patterson had a contract with the McKinley Company, by the terms of which, for loans of this character, he was to receive one-half of the commission represented in the smaller mortgage, when the principal mortgage was paid. When the mortgage to the McKinley Company matured in 1893, the Nulls executed to that company the mortgage in suit, as a renewal of the former mortgage, and at the time of its execution they also executed a mortgage for $75, representing the additional 3 per cent. of interest, as was done on the former occasion, these two mortgages also being acknowledged before Mr. Patterson. Subsequently, and before maturity, the mortgage in suit was assigned by the McKinley Company to the plaintiff. On July 17, 1907, Henry Null and wife by special warranty deed conveyed the land in controversy to defendant Hoagland. The covenant in the deed is "that the said premises are free and clear of all liens and incumbrances, and we do hereby covenant to warrant and defend the said premises against the lawful claims and demands of all persons claiming by, through, or under us, and against no other claims." The undisputed evidence shows that at the time of the execution of this deed the land was worth from $1,200 to $1,600. The only testimony shown in the abstract with reference to the execution of this deed and the consideration paid by Mr. Hoagland therefor is in the testimony of Mrs. Null. She testified that they lived on the land, rented it about two years, and sold it to Mr. Hoagland. "I do not remember what he paid. He paid me some money, but not much, because we sold it to him with the mortgage on it. I did not get much, I think about $225. I think in cash. Q. And you sold it because there was a mortgage on the land and that it was not paid, and that he would have to fight it? A. Yes, sir. Q. And he got to help you? A. Yes, sir. Q. You mean that he was to fight the mortgage? A. Yes, sir; we talked it all over."

The brief of defendant contains five specific assignments of error. We will consider these in their order.

1. That there is not sufficient evidence in the record to show that plaintiff is the owner of the mortgage in controversy and entitled to maintain this suit: Under this head the rulings of the court, in the admission of certain exhibits, are assailed, and the argument advanced that no sufficient foundation was laid for their admission. The record is so clearly against defendant upon this point that nothing would be gained by reviewing it.

2. That the mortgage contract sued upon was usurious: This contention must fail for the reason that the evidence is entirely insufficient to sustain it.

3. That plaintiff's action is barred by the statute of limitations: Upon this point it is sufficient to say that the facts upon which defendant's argument is based do not appear in the record.

4. That the land covered by the mortgage was the homestead of the Nulls at the time of the execution of the mortgage, and that the mortgage was void because Mr. Patterson, who took the alleged acknowledgment, was incompetent to take the same: The rule of law that one who has an actual pecuniary interest in a mortgage is incompetent to take the acknowledgment of the mortgagors thereto is well settled, as contended for by defendant. The question here is, did Mr. Patterson have such an interest in the mortgage in suit? That he had such an interest in the mortgage executed to the McKinley Company in 1888 is probably true. But at the time that mortgage was executed there was executed simultaneously therewith and as a part of the same transaction the commission mortgage for $75, one-half of which, under his contract with the McKinley Company, belonged to Mr. Patterson. If the evidence showed that he had a like interest in the commission mortgage given five years later and simultaneously with the mortgage in suit, defendant's contention would have to be sustained. The undisputed testimony of Mr. Patterson upon that point is that his contract with the McKinley Company, for compensation on loans, applied only to original loans and did not extend to re-

newals thereof; that he had no interest whatever in the mortgage in suit, or in the commission mortgage executed in connection therewith; that his contract with the Mc-Kinley Company was in writing; that he did not have the contract, but could state substantially the contents of it; that "the contract was to the effect that I would get compensation for my services of one-half the commission notes, I had no interest whatever in the loan, or any in the principal, but in the commission notes I was to get one-half, when the loan and principal notes were canceled, then I was entitled to one-half. These commission notes represented 3 per cent. of the 10 per cent. interest on the loan; that contract applied to original loans, but not renewals. Nothing was said in the original contract with reference to renewals. In correspondence afterwards, with McKinley-Lanning people, attention was called to that, and it was understood that I had no interest in renewals. I guaranteed the original loan, and to that extent, but had no recompense out of it. I guaranteed to the extent of my share of the commission. I was not entitled to anything unless the original loans were paid and the commission notes paid, then I was entitled to one-half of the commission. When I made renewals I took 3 per cent. mortgages just the same as I did before. My contract ceased when I made the original loan. Q. Was there anything in your written contract that provided when it should cease? A. Nothing in my original contract provided anything about renewals. I was to have my interest in the commission notes upon the original loan. When I took renewals I had no interest in the loan whatever. If the proceeds of the loan went to pay the original loan, of course, in that way I would get a benefit out of it. I would get a benefit in the payment of my commission. What I have testified to is substantially my relation with the McKinley-Lanning Loan & Trust Company, during the time I was transacting their business, as agent for them here." On cross-examination he testified: "In the principal loan and mortgage to McKinley-Lanning

Loan & Trust Company, I had no interest whatever. I had a contingent interest in the $75 note and mortgage, and the agreement as to any interest in these loans applied wholly to the original mortgage. Referring to exhibits 2 and 3, the note and mortgage to the McKinley-Lanning Loan and Trust Company, dated December 1, 1893 (the mortgage in suit), I had no interest whatever. Q. Did you receive personally any part or portion of the loan of $500 or any of the interest accruing thereon, either commission or the original loan? A. I received personally no part or portion of the original loan of $500 only what was necessary to pay expenses, such as taxes, etc., and nothing for services or otherwise that I rendered for and on behalf of the McKinley-Lanning Loan & Trust Company. I received nothing except reimbursements for actual expenses." There is nothing in the record even tending to contradict this testimony by Mr. Patterson. There is no evidence to show that the commission mortgage taken in 1888, in which Mr. Patterson had a half-interest, was paid by or through the mortgage in suit. In the light of this testimony, we think the district court was right in holding that Mr. Patterson had no interest in the renewal commission mortgage. If he had no interest in that, it is clear that he had none in the principal mortgage—the mortgage in suit. This contention of defendant must therefore fail.

5. That the district court erred in finding that, because defendant bought the property in controversy, of the value of $1,200 to $1,600, for $225, "with the mortgage on it," the mortgage was a part of the consideration for the land, and therefore defendant "cannot be heard as to either of the defenses by him made," is, under our holding upon point 4, immaterial.

Upon a consideration of the whole case, we conclude that the judgment of the district court was right, and it is

AFFIRMED.